# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

RONALD GREENE,

          Plaintiff,

v.                             Case No. 3:18-cv-1497-J-32PDB

SERGEANT RICE, et al.,

          Defendants.

_____

## <u>ORDER</u>

### I.   <u>Status</u>

Plaintiff, an inmate of the Florida penal system, initiated this case by filing a civil rights Complaint, <u>see</u> Doc. 1 (Complaint), against five Defendants: Sergeant Rice, Sergeant Fowler, Captain Hall, L. Thompson, and Officer Williams. He raises claims of excessive force, unconstitutional conditions of confinement, due process violations, and failure to respond to grievances. <u>See generally</u> Doc. 1.

According to Plaintiff, on August 3, 2018, while housed in the c-wing of Florida State Prison, Plaintiff asked Defendant Fowler if he could be moved to another cell, because his toilet was not working. <u>Id.</u> at 7. According to Plaintiff, Defendant Fowler replied, "No, now get off my door." <u>Id.</u> Plaintiff explains that a few hours later Defendants Hall and Fowler asked Plaintiff why he was

yelling, to which Plaintiff responded that he was not yelling, but just needed someone to fix his toilet. <u>Id.</u> Plaintiff states that Defendants Fowler and Hall advised that Plaintiff's toilet was not their problem, and after conferring in private, Defendant Hall turned to Plaintiff and stated, "This is what we're going to do. I'm going to gas you three times and if I come back down here, we're coming in to handle you."

According to Plaintiff, a half-hour later, Defendants Fowler and Hall came back to Plaintiff's cell and sprayed Plaintiff three times with chemical agents. <u>Id.</u> at 5, 7. They then placed Plaintiff in a decontamination shower. While showering, "Defendants took all of Plaintiff's property, bed, blankets[,] and sheets." <u>Id.</u> at 7. Defendants Fowler and Hall then took Plaintiff back to his cell; however, "there was chemical agents and water all over the floor and wall. Defendants wrote 'F**k Boy' with State toothpaste on the wall. Defendants told Plaintiff to remember this next time he yell[ed] at the officers." <u>Id.</u> at 7. Plaintiff argues that Defendants Fowler and Hall violated his Eighth Amendment rights by using excessive force on Plaintiff. He also argues that by returning Plaintiff to a contaminated cell and leaving him for over eight hours, Defendants Hall and Fowler subjected him to unconstitutional conditions of confinement. <u>Id.</u> at 5. Plaintiff states that Defendants Fowler and Hall's actions caused him pain, suffering, physical injury, and emotional distress. <u>Id.</u> at 5.

Eight hours after being returned to his contaminated cell, during shift change, Plaintiff informed Defendants Rice and Williams that his toilet was broken and that there were chemical agents all over his cell. Id. at 8. Plaintiff asked if he could be moved to another cell, "because his feet, eyes, and upper torso were burning and . . . driving him crazy." Id. Defendants Rice and Williams responded that they did not care and that he needed to "get off the door before [they] finish what the other shift started." Id. He states that two hours later, "Plaintiff could not take it [any] more and told Defendant Williams he ha[d] a Psych emergency." Id. Defendants then moved Plaintiff to b-wing. Id. According to Plaintiff, Defendants Williams and Rice violated his Eighth Amendment rights by failing to remove Plaintiff from a cell that was contaminated with chemical agents and had a broken toilet. Plaintiff argues that Defendants Williams and Rice's actions caused him pain, suffering, physical injury, and emotional distress. Id. at 5.

Plaintiff alleges that Defendants Rice, Williams, and Fowler then submitted three false disciplinary reports for destruction of state property, tampering with a security device, and disobeying a verbal order. Id. at 5, 8. He claims that he was never served with the reports. Id. at 8. According to Plaintiff on August 10, 2018, Defendants had a disciplinary hearing, but Plaintiff was not allowed to attend the disciplinary hearing or call witnesses. Id. at 8. After

being found guilty, and as a result of the disciplinary action, prison officials charged Plaintiff $1,031.20 to repair the broken toilet. Id. at 5. Plaintiff argues that Defendants Rice, Fowler, and Williams' actions violated Plaintiff's due process rights. Id. at 5

According to Plaintiff, he then filed grievances appealing the disciplinary action and the use of excessive force. However, Plaintiff argues that Defendant Thompson did not respond to the grievances, violating Plaintiff's First Amendment rights. Id. at 6.

As relief, Plaintiff seeks a preliminary and permanent injunction ordering Defendants to cease their abuse toward Plaintiff; compensatory damages in the amount of $50,000.00 against each Defendant; punitive damages in the amount of $500,000.00 against each Defendant; reimbursement for the $9,000.00 worth of stolen/lost/missing property; and any additional amount the Court deems just and proper. Id. at 9.

Before the Court is Defendants' Motion to Dismiss. See Doc. 16 (Motion). Defendants request dismissal for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies; (2) he fails to state conditions of confinement claims; (3) he fails to state a claim for failure to protect; (4) Defendants cannot be liable for disciplinary reports; (5) Defendant Thompson is not liable for denying grievances; (6) Plaintiff has failed to allege facts

demonstrating physical injury; and (7) Defendants are immune from suit in their official capacity for monetary damages. <u>See generally</u> Doc. 16.

The Court advised Plaintiff that the granting of a motion to dismiss would be an adjudication of the claim and could foreclose any subsequent litigation of the matter. <u>See</u> Doc. 8. Plaintiff filed a Response to the Motion, arguing that the Motion should be denied in part and granted in part. <u>See</u> Doc. 17 (Response). The Motion is ripe for review.

## II.    <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. <u>Id.</u> (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001)

(quotations and citations omitted). The Court liberally construes the pro se Plaintiff's allegations. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011).

## III. <u>Analysis</u>

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in a district court by a prisoner. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u>

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). <u>See also</u> <u>Jones</u>, 549 U.S. at 211. The Supreme Court has

instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its]

purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting

Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court

identified three circumstances in which an administrative remedy would be

considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative

procedure is unavailable when (despite what regulations or guidance materials

may promise) it operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an

administrative scheme might be so opaque that it becomes, practically

speaking, incapable of use." Id. Finally, a remedy may be unavailable "when

prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative

defense, the defendant bears "the burden of proving that the plaintiff has failed

to exhaust his available administrative remedies." Turner, 541 F.3d at 1082.

The Eleventh Circuit has articulated a two-step process that district courts

must employ when examining the issue of exhaustion of administrative

remedies.

> In Turner v. Burnside we established a two-step
> process for resolving motions to dismiss prisoner
> lawsuits for failure to exhaust. 541 F.3d at 1082. First,
> district courts look to the factual allegations in the
> motion to dismiss and those in the prisoner's response
> and accept the prisoner's view of the facts as true. The

court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step sequential grievance process for exhausting administrative remedies: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. To initiate the grievance process, an inmate must file an informal grievance within 20 days of "when the incident or action being grieved occurred" by completing Form DC6-236, Inmate Request. Fla. Admin. Code § 33-103.011(1)(a). The responsible staff member must complete a written response to the informal grievance within 10 calendar days of receiving it. Id. § 33-103.011(3)(a). If the inmate is dissatisfied with the response, or if time expires for the official to respond to the informal grievance, then the inmate may file a formal grievance within 15 days of receiving the unsatisfactory response or from the expiration of the time to respond, see id. §§ 33-103.011(1)(b), 33-103.011(4).3. Formal grievances must be addressed to the warden, assistant warden, or deputy warden using Form DC1-303, Request for Administrative Remedy or Appeal. Id. § 33-103.006(1). The institutional

grievance coordinator must log all formal grievances and provide inmates with receipts. Id. § 33-103.006(2)(h). Within 20 calendar days of receiving the formal grievance, the reviewing authority must complete an investigation and provide the inmate a written response. Id. §§ 33-103.006(6), 33-103.011(3)(b).

If the formal grievance process does not resolve the inmate's complaint, or if time expires for the reviewing authority to respond, the inmate may proceed to the third and final step: filing an appeal to the Office of the Secretary. See id. §§ 33-103.007(1), 33-103.011(4). The inmate has 15 days to file an appeal (running from receipt of the response to the formal grievance or expiration of the time to respond), again using Form DC1-303, Request for Administrative Remedy or Appeal. The appeal is sent to the Bureau of Policy Management and Inmate Appeals, id. § 33-103.007(3), which must log all appeals and forward receipts to the inmates, id. § 33-103.007(4)(b). The Secretary must respond to the grievance appeal within 30 calendar days of receiving it. Id. § 33-103.011(3)(c). Once a Florida prisoner has completed this three-step process, he is considered to have exhausted his administrative remedies. See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004).

Here, Defendants argue that Plaintiff failed to properly exhaust his allegations regarding Defendant Fowler and Defendant Hall's use of excessive force (spraying Plaintiff with chemical agents for no reason) and their deliberate

indifference to prison conditions (return of Plaintiff to a cell that had not been cleaned of the chemical agents).[1] Doc. 16 at 5-10. In support of their argument, Defendants aver that the grievances Plaintiff submitted to the FDOC regarding the August 3, 2018, incident did not contain any statements regarding these claims against Defendants Hall and Fowler. They appear to argue that Plaintiff only submitted two grievances regarding the August 3, 2018, events, and attach copies of those grievances as exhibits to their Motion. See Docs. 16-2; 16-3.

A review of these exhibits shows that on August 27, 2018, Plaintiff filed a grievance with the Secretary that reads as follows:

> On 8-3-18 I was place[d] on property restriction and place[d] in cell #C1103. I explain[ed] to Sgt. Rice that my toilet won't flush. He stated I should never [have] broke it with I replied I never broke the toilet and I could never break it if I tried. I'm on strip bare foot with just boxer's on. I asked to be moved and Sgt. Rice moved me to another cell he wrote me a DR for destruction of state property. He never said how I broke it or anything. They have charge me 1,026 dollars and took 165 dollar out my inmate trust now I have no money for something I didn't do. I wrote it up to the warden with no response. I would like for you to please look into this matter and refund my money back to my inmate account please.

---

[1] At the outset of their exhaustion argument, Defendants argue "Plaintiff failed to properly avail himself of the grievance process with regard to all of his claims." Doc. 16 at 5 (emphasis added). However, the substance of their argument is clearly focused on Plaintiff's alleged failure to exhaust his claims of excessive force and being returned to a contaminated cell – the allegations involving Defendants Fowler and Hall. Doc. 16 at 10.

> I[t] has also been over 15 days since I wrote the
> warden with no response. I don't think th[ey're] turning
> all my inmate grievances in. please help.

Doc. 16-2 at 2 (#18-6-37859). The Secretary returned the grievance on

September 14, 2018, explaining in pertinent part:

> Your request for Administrative Remedy or
> Appeal has not been filed in compliance with Chapter
> 33-103.006, Inmate Grievance Procedure. You did not
> provide this office with a copy of the formal grievance
> filed at the institutional level as required by rule or the
> reason you provided for by-passing that level of the
> grievance procedure is not acceptable.
>
> Our records do not reflect that a formal grievance
> was received from you.
>
> Upon receipt of this response, if you are within
> the allowable time frames for processing a grievance,
> you may resubmit your grievance at your current
> location in compliance with Chapter 33-103, Inmate
> Grievance Procedure.
>
> Based on the foregoing information, your appeal
> is returned without action.

Doc.16-2 at 1. The second attached grievance is one that Plaintiff sent to the

Secretary on October 15, 2018, that reads as follows:

> As per 33-103.011(4). The time frame has passed
> for the institution to file a response to my formal
> grievance. That action allows me to proceed to the next
> level.
>
> Appealing Disciplinary Action

I've filed a grievance with the Institution with no response so I wrote secretary of DOC what else could I do they are throwing gri[evances] away at fsp.

On 8-3-18 I was place[d] in the cell in c1103 and hour later they gas me and wrote me DR for d[e]struction of state property. And took 165 dollars out my account. I never broke anything and I could not break a toilet if I wanted to. I've wrote several griev[ances] and only one was respond[ed] [to] on 10-5-18. I did file in compli[ance] with chap[t]er 33-103 what was I s[u]ppos[ed] to do if the[y're] not answering my grievance. I've been gas[sed] and place[d] on cell strip what can I do and they are taking all my money my family send[s] me for a toilet I did not break can you please help me and look into this matter because I never bypass[ed] the grievance procedure the[y're] not responding to my grievance and they have no pro[o]f that I broke a toilet on 8-3-18. Please look into this matter.

Doc.16-3 at 2 (#18-6-44232). The Secretary returned the second grievance, advising Plaintiff of the following:

Your request to Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.

Our records do not reflect that a formal grievance was received from you. Contact has been previously made with institution grievance staff regarding allegations that they are disposing of grievances without processing and they denied the allegation.

> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance procedure.
>
> Based on the foregoing information, your appeal is returned without action.

Docs. 1-1 at 5; 16-3 at 1.[2]

In Response, Plaintiff appears to argue that he exhausted his administrative remedies as to these claims by filing other grievances that have not been provided to the Court. Doc. 17 at 5-6. He further avers that to the extent he did not complete the three-step grievance process, he was not obligated to do so because such remedies were unavailable. Id. According to Plaintiff, his exhaustion efforts were as follows:

> [Plaintiff] initiated the grievance process against Capt. Hall and Sgt. Fowler on August 12, 2018. After receiving no response to that informal grievance within the appropriate time frame, Plaintiff proceeded to the next level on September 4, 2018 by filing a formal grievance at the institutional level and central office. After receiving no response to either of those grievances[,] Plaintiff knew that his grievances [were] thrown away which has remained an on-going problem at Florida State Prison for the past two years. Then [Plaintiff] initiated this suit.

---

[2] Defendants also attach a copy of Plaintiff's search results for his grievance appeals records, see Doc. 16-1, and a duplicate copy of Plaintiff's August 27, 2018, grievance (#18-6-37859) and the FDOC's response, see Doc. 16-3.

Doc. 17 at 5-6. In support of his exhaustion allegations, Plaintiff provides the Court with copies of the above-referenced grievances filed with the Secretary on August 27, 2018 (#18-6-37859), and October 15, 2018 (#18-6-44232); and the Secretary's responses thereto. See Doc. 1-1.

Accepting Plaintiff's view of the facts as true, the Court finds that dismissal of these claims for lack of exhaustion is not warranted at the first step of Turner. See Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are question of fact that can bar dismissal at Turner's first step). Thus, the Court proceeds to the second step of the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes findings of fact.

The first issue in dispute is whether Plaintiff completed the three-step grievance process regarding his claims of excessive force (spraying with chemical agents) and conditions of confinement (return of Plaintiff to a cell that had not been cleaned of chemical agents). Plaintiff alleges that he filed an informal grievance and a formal grievance. Doc. 17 at 5. For purposes of this analysis, the Court liberally construes Plaintiff's statement that he also filed a grievance at the "central office," see id., to be an assertion that he filed an appeal, as well. However, the evidentiary materials demonstrate that Plaintiff did not file an appeal regarding these claims.

Defendants provide a log of all grievance appeals Plaintiff has filed with the FDOC. See Doc. 16-1. The only appeals received by the Secretary after the August 3, 2018, incident are the two previously-referenced grievances that Plaintiff submitted on August 27, 2018 (#18-6-37859), and October 15, 2018 (#18-6-44232). Id. at 2. The August 27, 2018, grievance contains no claim of excessive force or being returned to a contaminated cell, see Doc. 16-2 at 2; and while the October 15, 2018, grievance states "they gas[sed] me," it does not allude to an excessive use of force or being returned to a cell contaminated with chemical agents, see Doc. 16-3. Regardless, even if these grievances contained those claims, neither appeal could be used to satisfy the final step of the process as they were both returned to Plaintiff for noncompliance with rule 33-103.006. See Docs. 16-2; 16-3. As such, the Court finds that Defendants have met their burden in demonstrating that Plaintiff did not complete the three-step grievance process regarding the following claims: excessive force (spraying with chemical agents) and conditions of confinement (return of Plaintiff to a cell that had not been cleaned of chemical agents).

The second issue in dispute is whether the grievance process was unavailable to Plaintiff, relieving him of any obligation to complete the three-step procedure. Plaintiff advances two arguments in support of unavailability. First, he claims that the FDOC's failure to respond to his grievances prevented

him from completing the grievance process. However, the FDOC's failure to respond to a grievance does not render the process unavailable. Indeed, even assuming the FDOC failed to respond to Plaintiff's informal and formal grievances, "the grievance procedure provides that he could have 'proceed[ed] to the next step of the grievance process' – administrative appeal – after the expiration of the 20 days." Pavao v. Sims, 679 F. App'x 819, 826 (11th Cir. 2017) (quoting Fla. Admin. Code § 33-103.011(3), (4)). "Because [Plaintiff] could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response." Pavao, 679 F. App'x at 826 (citing Turner, 541 F.3d at 1084, for the proposition that "a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days.").

Second, Plaintiff argues that his administrative remedies were unavailable, because "after receiving no response to either of [his] grievances, Plaintiff knew that his grievances [were] thrown away[,] which has remained an on-going problem at Florida State Prison . . . ." Doc. 17 at 5-6. However, Plaintiff's assumption that his grievances were being destroyed did not amount to the type of intimidation that would render a grievance process unavailable.

Indeed, the evidence submitted by both parties shows that, during the timeframe in which he should have filed an appeal,[3] Plaintiff filed the August 27, 2018, grievance (#18-6-37859) with the Secretary, see Doc. 16-2 at 2; received the September 14, 2018, response from the Secretary, see id. at 1; submitted a second grievance to the Secretary on October 15, 2018 (#18-6-44232), see Doc. 16-3 at 2; and received a second response from the Secretary on October 24, 2018, see id. at 1. Because Plaintiff was actively availing himself of the grievance procedure, especially with the Secretary, during the relevant timeframe, the Court finds that Plaintiff was not deterred or thwarted from pursuing his administrative remedies.

Accordingly, the Court finds that neither Plaintiff's allegations nor the evidentiary materials in the record indicate that the administrative remedies were unavailable to Plaintiff. As such, the Court concludes that the Defendants' Motion is due to be granted to the extent that Plaintiff has failed to exhaust his administrative remedies regarding his claims of excessive force (spraying with chemical agents) and conditions of confinement (return of Plaintiff to a cell that had not been cleaned of chemical agents) against Defendants Hall and Fowler.

---

[3] Assuming Plaintiff submitted his formal grievance on September 4, 2018, the FDOC would have had until September 24, 2018 to file a response. Once receiving no response, Plaintiff would have been able to file an appeal any time between September 24, 2019, and October 9, 2018.

## B. Failure to State a Claim for Relief

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) ). In the absence of a federal constitutional deprivation or violation of a federal right attributable to a defendant, a plaintiff cannot sustain a cause of action against the defendant.

### i. Eighth Amendment Conditions of Confinement

To state a claim that his conditions of confinement violated the Eighth Amendment, a prisoner must allege the prison official was deliberately indifferent to conditions that were "sufficiently serious." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) ("The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement."). Conditions of

confinement are sufficiently serious under the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state a claim under the Eighth Amendment. Id.

Defendants argue that Plaintiff fails to state an Eighth Amendment claim regarding the conditions of his confinement as to Defendants Fowler, Hall, Rice, and Williams. Doc. 16 at 10-14. They maintain that Plaintiff's allegations that he remained in a cell for eight hours with no working toilet and chemical agents on the walls do not present the type of extreme conditions that pose an unreasonable risk of serious damage to his health or safety. Id. at 13. Defendants further argue that Plaintiff's August 27, 2018, grievance (#16-6-37859), that Plaintiff attaches to his Complaint, demonstrates that when Plaintiff asked to be moved to another cell, Defendant Rice promptly moved him. Id. at 13-14.

In his Response, Plaintiff states the following:

> The Defendants' argument is that Plaintiff has not stated a claim against Defendants Rice and Williams, which is true. However, the Defendants' [have] failed to mention or dispute within its Motion to Dismiss that Defendant Hall and Fowler[] did not violate Plaintiff's Eighth Amendment right . . . when they conspired to use [chemical agents] against Plaintiff without a legitimate reason other than to cause pain and for punishment.

. . .

> Thus, Plaintiff has stated an 8th Amendment claim against Defendants Hall and Fowler[] and shall proceed forth on such claim and dismiss Defendants Rice and Williams.

Doc. 17 at 7-8.

As explained <u>supra</u>, the Court dismisses the claims of unconstitutional conditions of confinement (return of Plaintiff to a cell that had not been cleaned of chemical agents) and excessive force (spraying with chemical agents) against Defendants Hall and Fowler, because Plaintiff failed to properly exhaust his administrative remedies as to those claims. Thus, the only conditions of confinement claims left for the Court to consider are those against Defendants Rice and Williams (failing to remove Plaintiff from a cell that was contaminated with chemical agents and had a broken toilet). However, Plaintiff now argues that he does not state a claim for relief against Defendants Rice and Williams and seeks to dismiss them from this suit. The Court heeds Plaintiff's request.

### ii. Failure to Protect

Defendants argue that Plaintiff has failed to state a claim for failure to protect against Defendants Rice and Williams. Doc. 16 at 14-15. Plaintiff did not respond to this argument. <u>See generally</u> Doc. 17. However, the Complaint does not contain a failure to protect claim. Further, in his Response, Plaintiff admits that he does not assert a claim against Defendants Rice and Williams,

and requests that they be dismissed from this action. Id. at 8. Thus, the Court

declines to consider this issue.

### iii. Due Process Violation – Disciplinary Reports

To adequately plead lack of due process at a disciplinary hearing, a

plaintiff must assert that: (1) he had a liberty or property interest at stake; and

(2) that the procedures he was afforded were constitutionally deficient. Rowe v.

DeBruyn, 17 F.3d 1047, 1053 (7th Cir.1994). A liberty interest may arise if, as

a consequence of the disciplinary finding, a prisoner's term of incarceration is

increased, as in the loss of good time credit, or where he is subjected to "atypical

and significant hardship . . . in relation to the ordinary incidents of prison life."

Sandin v. Connor, 515 U.S. 472, 484 (1995); Allen v. Sec'y Fla. Dep't of Corr.,

578 F. App'x 836, 839 (11th Cir. 2014). As to a property interest, the Supreme

Court has held that "an unauthorized intentional deprivation of property by a

state employee does not constitute a violation of the procedural requirements of

the Due Process Clause of the Fourteenth Amendment if a meaningful post-

deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517,

533 (1984). When a prisoner's due process rights are triggered, he is entitled to,

among other things, an opportunity to call witnesses and present documentary

evidence at a disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539 (1974).

Here, Defendants argue that Plaintiff has failed to allege a due process

violation against Defendants Rice, Fowler, and Williams, because he does not claim that the disciplinary hearing affected the length of his sentence or resulted in an "atypical and significant hardship." Doc. 16 at 16-18. They further allege that Plaintiff does not allege a property interest, because the state of Florida provides him with an adequate post-deprivation remedy. Id. at 17. Plaintiff did not respond to this argument. See generally Doc. 17.

The Court agrees that Plaintiff has not alleged a deprivation of a constitutionally protected liberty or property interest. Although Plaintiff alleges that this disciplinary hearing resulted in the loss of $1,031.20 from his prison account, the basis of Plaintiff's property interest in that money comes from statutes, regulations, ordinances, and contracts, not the Constitution. See Key West Harbour v. City of Key West, 987 F.2d 723, 727 (11th Cir. 1993) (holding that "state law defines the parameters of a plaintiff's property interest for purposes of § 1983," and "[u]nder Florida law, a statute, ordinance, contract, policies, and practices . . . may create a property interest"). Plaintiff has an available and adequate post-deprivation remedy under state law. "Under Florida law, [a plaintiff] can sue the officers for the conversion of his personal property." Jackson v. Hill, 569 F. App'x 697, 698 (11th Cir. 2014) (citing Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009)). As such, Plaintiff has failed to state a valid procedural due process claim. Further, the Court need not consider

whether the failure to call Plaintiff's witnesses denied him due process, as the Court has already found that Plaintiff did not have a protected interest at stake. Plaintiff's due process claim is dismissed.

### iv. Failure to Respond to Grievances

Defendants argue that Plaintiff's First Amendment claim against Defendant Thompson should be dismissed because Plaintiff has no constitutionally protected liberty interest in a prison grievance procedure. Doc. 16 at 18-19. Plaintiff did not respond to this argument. See generally Doc. 17.

Defendants are correct that a prisoner has no constitutionally protected interest in an inmate grievance procedure. Thomas v. Warner, 237 F. App'x 435, 437-38 (11th Cir. 2007) ("We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."); Dunn v. Martin, 178 F. App'x. 876, 878 (11th Cir. 2006) (holding that a state prisoner, who alleged that prison officials failed to respond to his grievance and failed to follow their own rules on responding to grievances, did not have a constitutionally protected liberty interest in an inmate grievance procedure). Accordingly, Plaintiff has failed to state a First Amendment Claim against Defendant Thompson, and thus, this claim is due to be dismissed.

## IV.   Conclusion

Defendants' Motion is due to be granted as to Plaintiff's excessive force and conditions of confinement claims against Defendants Hall and Fowler; the conditions of confinement claims as to Defendants Rice and Williams; the due process claims against Defendants Rice, Williams, and Fowler; and the First Amendment claim against Defendant Thompson. Given these findings, the Court declines to address Defendants' remaining arguments. In sum, all claims and all Defendants are dismissed.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     Defendants' Motion to Dismiss (Doc. 16) is **GRANTED** to the extent described herein.

2.     Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of February, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7
C:    Ronald Greene, #C02017
       Counsel of Record